675 P.2d 127

STATE of New Mexico, Petitioner,

v.

Janet PEDRONCELLI, Respondent.

Janet PEDRONCELLI, Petitioner,

v.

STATE of New Mexico, Respondent.

Nos. 15101, 15102.

Supreme Court of New Mexico.

Jan. 12, 1984.

See also, 97 N.M. 190, 637 P.2d 1245.

Paul Bardacke, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for State of N.M.

Scott McCarty, Albuquerque, for Janet Pedroncelli.

## OPINION

PAYNE, Justice.

Janet Pedroncelli was elected Secretary-Treasurer of the union CWA Local 8611.

In her official capacity, she was custodian of the credit union funds. She negotiated twenty-two checks and fourteen cash withdrawal vouchers over a six-month period, embezzling a total of $16,571.

Pedroncelli was charged by criminal information with one count of embezzlement over $2,500, in violation of NMSA 1978, Section 30–16–8, a third degree felony. She was found guilty by a jury. She appealed, alleging, *inter alia*, that the trial court erred in failing to direct a verdict of acquittal because each misappropriating act was under a $2,500 amount. The court of appeals reversed, but did not remand for acquittal. It held that the evidence "prove[d] 36 separate acts of embezzlement of over $100 but not more than $2,500, all fourth degree felonies." The court of appeals concluded:

> The State could have charged defendant in 36 counts; it chose to charge in only one. *See State v. Gurule*, 90 N.M. 87, 559 P.2d 1214 (Ct.App.1977). We * * reverse the conviction because numerous embezzlements could not be aggregated to increase numerous fourth degree felonies to the status of a third degree felony. *See* § 30–16–8; *Sanchez v. State*, 97 N.M. 445, 640 P.2d 1325 (1982).

The matter was "remanded for correction of the judgment and sentence to reflect conviction on one count of embezzlement of more than $100 but less than $2,500."

We reverse the court of appeals and affirm the trial court.

Although the court of appeals relied on *Sanchez*, its decision lacks further explanation of why the jury could not conclude that only one crime had occurred. In *Sanchez*, we affirmed the trial court's determination that the indictment was faulty because it was vague. Defendants were charged with having " 'received, retained or disposed' of 72 different items that belonged to four separate parties." *Id.* at 446, 640 P.2d at 1326. The indictment accumulated these charges into one count, thereby elevating the crime to a third degree felony.

■ The controlling rationale of *Sanchez* was that an accused is entitled to be apprised of the crime(s) with which he is charged in sufficient detail to permit him to prepare his defense. While we continue to subscribe to this latter principle, as reflected in *Sanchez,* we observe that Pedroncelli is not aided by such reasoning. We are not here concerned or presented with a vague or otherwise defective charging instrument.

■ Nor do the circumstances presented in the case at bar implicate a double jeopardy problem. The "same evidence" test determines, for double jeopardy purposes, whether two or more offenses actually constitute a single offense. *State v. Tanton,* 88 N.M. 333, 540 P.2d 813 (1975); and *Owens v. Abram,* 58 N.M. 682, 274 P.2d 630 (1954), *cert. denied,* 384 U.S. 917, 75 S.Ct. 300, 99 L.Ed. 719 (1955). The "same evidence" test would preclude the State from bringing separate charges for any of the thirty-six isolated acts of embezzlement, *along with* the charge which formed the basis for Pedroncelli's conviction. The issue, though, is not whether Pedroncelli is subject to thirty-six (or one or more thereof) separate prosecutions for fourth degree embezzlement, *in addition to* her prosecution for third degree embezzlement. Rather, the salient question compelling our consideration is whether the jury could properly consider Pedroncelli's repeated defalcations, *in toto,* as a single crime. We conclude that the jury could so consider the evidence herein.

■ The "single larceny doctrine" has been addressed or some of its related aspects have been discussed in prior New Mexico appellate decisions. *See State v. Allen,* 59 N.M. 139, 280 P.2d 298 (1955); *State v. Romero,* 33 N.M. 314, 267 P. 66 (1928); *State v. Klasner,* 19 N.M. 474, 145 P. 679 (1914); *State v. Boeglin,* 90 N.M. 93, 559 P.2d 1220 (Ct.App.1977); and *State v. Bolen,* 88 N.M. 647, 545 P.2d 1025 (Ct.App. 1976), *cert. denied,* 89 N.M. 5, 546 P.2d 70 (1976). In *Allen,* we held that the trier of fact could determine whether distinct or successive takings constituted single or multiple offenses. We quoted approvingly from 36 C.J. *Larceny* § 219, at p. 798:

'Where the property is stolen from the same owner and from the same place by a series of acts, if each taking is the result of a separate, independent, impulse, each is a separate crime; but if the successive takings are all pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single larceny, regardless of the time which may elapse between each act.'

*Allen,* 59 N.M. at 140–41, 280 P.2d at 299.

■ We readopt the above-quoted reasoning and hold that where the State obtains an indictment or files an information or misdemeanor complaint that contains a single charge which is premised upon a series of takings or conversions from one victim, the factfinder may, upon the trial of that charge, determine if the successive takings or conversions are associated with a single, sustained criminal intent. Those convicted of such crimes may, on appeal, challenge the sufficiency of the evidence which supports the finding that the takings or conversions were allied with one common intent element. *Compare State v. Lucero,* 98 N.M. 311, 648 P.2d 350 (Ct.App. 1982), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982) (sufficient evidence supported jury's finding that the defendant intended to commit a theft *at the time* he entered the burglarized premises).

■ Embezzlement is admittedly distinguishable from larceny. Unlike larceny it is purely a statutory crime which did not exist at common law. *Territory v. Maxwell,* 2 N.M. (Gild) 250 (1882); *State v. Bryant,* 99 N.M. 149, 655 P.2d 161 (Ct.App. 1982). Larceny involves an original wrongful taking or trespass, whereas embezzlement involves lawfully possessed property that an offender later converts to his own use. *State v. Peke,* 70 N.M. 108, 115, 371 P.2d 226, 230 (1962), *cert. denied,* 371 U.S. 924, 83 S.Ct. 293, 9 L.Ed.2d 232 (1962); and *Bryant,* 99 N.M. at 150, 655 P.2d at 162; *see also* NMSA 1978, UJI Crim. 16.00 and 16.31 (Repl.Pamp.1982 and Supp.1983).

These differences do not, however, preclude reliance upon *Allen* or other "single larceny" decisions. Both of these crimes encompass the requirement that the taking or conversion occur contemporaneously with an intention to deprive the owner of the property. NMSA 1978, UJI Crim. 16.00 and 16.31 (Repl.Pamp.1982 and Supp.1983). Accordingly, the factfinder may, in either case, evaluate the evidence to determine if one protracted intention accompanies the several takings or conversions that may be implicated within a single charge.

■ The Legislature defines what behavior constitutes a unit of prosecution. *United States v. Johnson*, 612 F.2d 843, 845 (4th Cir.1979). The legislative intent is determined primarily by the language of the statute itself; the words are given their ordinary meaning unless a different intent is clearly indicated. *Winston v. New Mexico State Police Board*, 80 N.M. 310, 454 P.2d 967 (1969); *State v. Tapia*, 89 N.M. 221, 549 P.2d 636 (Ct.App.), *cert. denied*, 89 N.M. 206, 549 P.2d 284 (1976).

■ NMSA 1978, Section 30–16–8 states, "Embezzlement consists of the embezzling or converting to [one's] own use of anything of value, with which [one] has been entrusted, with fraudulent intent to deprive the owner thereof." According to the plain language of this statute, embezzlement is a betrayal or violation of one's entrustment. The nature of the entrustment involved in a particular case should be considered in ascertaining the number of crimes committed and the permissible unit of prosecution employed in that case. The evidence adduced at Pedroncelli's trial sufficiently showed her continuing intention to violate her ongoing entrustment as an elected union official. Thus, the proof was consistent with the third degree felony charge.

We agree with Judge Donnelly's dissent from the Court of Appeals' Opinion herein and order its publication. He correctly relies upon a case from another jurisdiction which closely resembles the instant case. *See Nelson v. State*, 208 Tenn. 179, 344 S.W.2d 540 (1960) (appropriation of union's funds by officers thereof who cashed a series of checks over several months was held to be pursuant to a single continuing intent and a general scheme).

We hereby reverse the court of appeals and the defendant's conviction as a third degree felon is affirmed.

IT IS SO ORDERED.

FEDERICI, C.J., SOSA, Senior Justice, and RIORDAN, J., concur.

STOWERS, J., not participating.

No. 5988.

Court of Appeals of New Mexico.

Aug. 11, 1983.

OPINION

WALTERS, Chief Judge.

Janet Pedroncelli was charged by criminal information with one count of embezzlement over $2,500, in violation of NMSA 1978, § 30–16–8, a third degree felony. Following a jury trial in which she was found guilty, she appeals. Her first point alleges error in the court's failure to direct a verdict of acquittal, on grounds that each of the series of defalcations proved was under a $2,500 amount.

The other two issues raised are whether defendant's counsel should have been allowed to testify regarding use of double-vouchering evidence, and whether certain jurors should have been discharged for cause.

We reverse on the first issue, and remand for correct sentencing.

I.

The criminal information charged that between October 17, 1979, and April 18, 1980, defendant "did embezzle or convert to Defendant's own use a thing of value, to wit: CWA Local 8611 Credit Union funds with which Defendant had been entrusted with fraudulent intent to deprive CWA Local 8611 and the membership, the own-

ers thereof, said things of value exceeding $2500 ...." The proofs were that 22 checks, ranging in amounts from $300 to $1,000 each, were drawn on credit union funds and endorsed by defendant during the charged period. There were, in addition, 14 cash voucher withdrawals of credit union funds, each for $200, paid to defendant over the same period. This evidence served to prove 36 separate acts of embezzlement of over $100 but not more than $2,500, all fourth degree felonies. Section 30–16–8.

The State could have charged defendant in 36 counts; it chose to charge in only one. *See State v. Gurule*, 90 N.M. 87, 559 P.2d 1214 (Ct.App.1977). We do not agree that acquittal is required, but we reverse the conviction because numerous embezzlements could not be aggregated to increase numerous fourth degree felonies to the status of a third degree felony. *See* § 30–16–8; *Sanchez v. State*, 97 N.M. 445, 640 P.2d 1325 (1982).

## II.

Before trial, defendant moved to preclude the State from showing that on several occasions defendant had doubly charged her employer, Mountain Bell, and the union for time spent on union business. There had been an agreement between those concerned that the union would pay defendant the same wage she earned at Mountain Bell while she was engaged in union business, and that Mountain Bell would not pay her but would excuse her absences from work while she was so engaged.

Defense counsel sought to testify that Sandra Norman, the assistant district attorney who had filed the information, had represented that evidence of double vouchering would not be presented, yet the witness list showed the names of witnesses who would testify only to that fact. The trial court refused, under rule of court, to permit counsel to testify, but the assistant who purportedly made the representations was called by the defense and she testified.

Defense's argument has two heads: (1) the witness list was received the day before the scheduled trial and, therefore, provided inadequate notice and opportunity for defendant to locate a rebuttal witness to testify on the double vouchering evidence, and (2) the State's intention to call such witnesses violated the earlier representations of the State's attorney, upon which defendant had relied.

Although peripheral facts were developed going to both arguments, we think defendant's own statement to the court induced the court's ruling. During his argument on the motion, counsel said:

> I would also suggest, your honor, that my notes indicate that * * * on June 2, when Mr. Pedroncelli was deposed, that's when [the State's attorney] in response to my question, told me about using the double voucher theory. Now as far as evidence is concerned, your honor, I have been speaking as an officer of the court on a preliminary matter. I'd be happy to be sworn. And I have Sandra Norman who is right here; she can say a lot more accurately than I can what she and Mr. Walker discussed.

Thus, counsel admitted that a week before trial he knew of the State's plan to use double-vouchering evidence and, secondly, he offered Ms. Norman's testimony as more accurate than his own regarding the representations he said he had relied on. Ms. Norman testified that she had only agreed that the State would not pursue a second count based on the double-vouchering acts. Defendant was skewered by her testimony.

We find no error in the court's refusal to permit counsel to testify. None of the cases cited by defendant lead us to a contrary conclusion.

## III.

Defendant finally claims that three jurors who responded affirmatively when asked,

Do you all feel that to make a fair determination of guilt or innocence you are required to know both sides of the story? should have been excused for cause. Defendant subsequently challenged them peremptorily and none of them served on the jury.

Defendant's claim fails for two reasons: First, she failed to fully establish that the veniremen complained of should have been excused for cause. After the three indicated that they would have to hear both sides, defendant should have explained the presumption of innocence to them and defendant's freedom from proving that innocence, and then asked if they would be able to follow the legal requirements of the presumption. Defendant must allege, and the record must show, that defendant was denied a fair and impartial jury. *State v. Sluder*, 82 N.M. 755, 487 P.2d 183 (Ct.App. 1971). If there is a genuine concern about the partiality of a prospective juror, defendant must take adequate steps to establish such bias in the record. *See State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (Ct.App. 1983). Here, the mere statement by the jurors that they had to hear both sides was insufficient to establish that they would not be willing to follow the law as instructed.

The second problem with defendant's claim is that none of the veniremen complained of ever served on the jury. Even if the challenges for cause had been erroneously overruled, and even though defendant may have exhausted his peremptory challenges, there is no ground for reversal unless it is established on appeal that an objectionable juror was forced upon the challenging party and sat on the jury. *State v. Bailey*, 27 N.M. 145, 198 P. 529 (1921); *Colbert v. Journal Publishing Co.*, 19 N.M. 156, 142 P. 146 (1914); *Territory v. Young*, 2 N.M. 93 (1881). Here, none of the prospective jurors who had indicated they needed to hear both sides served on the jury. Defendant's third point cannot be sustained.

The conviction of embezzlement of over $2,500 is reversed. The matter is remanded for correction of the judgment and sentence to reflect conviction on one count of embezzlement of more than $100 but less than $2,500.

IT IS SO ORDERED.

HENDLEY, J., concurs.

DONNELLY, J., concurring and dissenting.

DONNELLY, Judge (concurring in part and dissenting in part).

I concur in the majority opinion affirming defendant's conviction and finding that the trial judge did not err in (1) denying the motion for acquittal, (2) the admission of evidence, or (3) his rulings upon defendant's challenges to prospective jurors.

I respectfully dissent from the holding of the majority reversing defendant's conviction for embezzlement of over $2,500.00. As shown by the record, defendant was charged with one count of embezzlement over $2,500.00 under NMSA 1978, § 30–16–8, a third degree felony. At trial, the State introduced evidence showing that defendant, while an employee of CWA Local 8611, cashed 22 checks and made 14 cash withdrawals of monies of the union without authorization or authority totalling $16,571.00 between October 17, 1979 and April 18, 1980. The checks and cash withdrawal vouchers were drawn on several different accounts held by the union at Mountain States Federal Credit Union.

The information filed against defendant charged a single count of embezzlement, not a series of separate embezzlements. Whether the acts of the defendant constituted separate offenses or one continuing offense was a factual question of defendant's intent, properly to be determined by the jury. *See State v. Clokey*, 89 N.M. 453, 553 P.2d 1260 (1976); *State v. Allen*, 59 N.M. 139, 280 P.2d 298 (1955).

In *State v. Allen*, involving a charge of larceny, the court quoted with approval from *People v. Cox*, 286 N.Y. 137, 36 N.E.2d 84, 136 A.L.R. 943 (1941): "As long as the larceny is held to be pursuant to a

single intent, and one complete, illegal scheme, it matters not the length of the period over which the takings continued."

This same rule was discussed in *Nelson v. State*, 208 Tenn. 179, 344 S.W.2d 540 (1960), a case similar to the instant cause. There, defendants were charged with illegally diverting monies of a labor union. From the summer of 1956 through January 1958, they signed and cashed 85 union checks totalling $6,148.28. No single check exceeded or equalled the amount of $100.00. The court held:

> [T]he general law seems to be in other States that if each taking of these separate checks is the result of a separate independent impulse or intent each taking is a separate crime, but "On the other hand, where it appears that successive takings are actuated by a single, continuing, criminal impulse or intent or are pursuant to the execution of a general larcenous scheme, it has been held ... that such successive takings constitute a single larceny, regardless of the extent of the time which may have elapsed between each taking." [*Annot.*,] 136 A.L.R., 948, 950 [ (1942) ] * * *. *"Whether a series of successive acts of taking constitutes several thefts or one single crime must be determined by the particular facts and circumstances of each case."* [*Id.*, at] Page 951. [Emphasis added.]

Similarly, *State v. Van Auken*, 77 Wash.2d 136, 460 P.2d 277 (1969), held that charges of embezzlement of money or property lawfully received do not depend on the time of acquisition or whether parts of the total which has been misappropriated come into possession of the accused at different times. *See* Annot. 136 A.L.R. 948.

Defendant did not submit an alternative requested instruction or challenge the instruction given on the single charge of embezzlement. *See* NMSA 1978, U.J.I. Crim. 16.31 (Repl.Pamp.1982). Under the evidence herein, the jury could properly have found that defendant's actions of embezzlement constituted an intent to commit one continuing criminal scheme rather than a series of separate crimes. As stated in the Committee Commentary to U.J.I. 16.31, "Embezzlement, like larceny, is divided into degrees depending on the value of the property."

In determining whether the evidence supports a criminal charge or an essential element thereof, the reviewing court must view the evidence in a light most favorable to the State, resolving all conflicts therein and indulging in all permissible inferences therefrom in favor of the verdict. *State v. Tovar*, 98 N.M. 655, 651 P.2d 1299 (1982). NMSA 1978, Crim.P.R. 7(a) (Repl.Pamp. 1980), provides further that a criminal information shall not be deemed invalid "nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected, because of any defect, error, omission, imperfection or repugnancy therein which does not prejudice the substantial rights of the defendant upon the merits." Under the facts here no prejudice has been shown.

I would affirm defendant's conviction as a third degree felony.